**Rome Electric Co., Inc., v. R. & F.
Construction, Inc.**

*Erik F. Lawson, Jr.,* and *Louis Vaira,* for exceptants.

*John D. Finnegan,* of *Martin and Finnegan,* contra.

HANDLER, *J.*, April 10, 1974—R & F Construction, Inc. became vested with title to a certain tract of land in the Third Ward of the Borough of Indiana (southwest corner of Eighth and Church Streets) by deed dated April 8, 1971, and recorded July 14, 1971, in the Recorder's Office of Indiana County in Deed Book volume 624, page 831. Thereafter, R & F Construction Company entered into a contract with H. G. Ward, Inc., as general contractor, to erect an apartment building on the land. R & F as owner and H. G. Ward as contractor executed a waiver of lien which was filed in the office of the Prothonotary of Indiana County on September 21, 1971 to no. 4, December term 1971. R & F encountered insurmountable financial difficulties, and, having delivered certain judgment notes to Rome Electric Co., Inc., and James Banda, Inc., subcontractors of H. G. Ward, the sheriff of Indiana County exposed the land and nearly completed structure to a sale on the executions of Rome Electric and James Banda.

This litigation finds its origins in certain exceptions which were taken by Rome Electric Co., Inc., and James Banda, Inc., to the distribution of the proceeds of a sheriff's sale held December 15, 1972, by the Sheriff of Indiana County. The distribution provided for full payment of a mechanics' lien claim entered in this court at no. 17, December term 1972, in which Houston-Starr Company, hereinafter Houston, was plaintiff and in the amount of $16,265.61. By memorandum and order of this court dated March 8, 1973, this matter was referred to G. W. Musser, Esq., a member of the bar of Indiana County, for audit.

The auditor took testimony on June 21, 1973. He filed his report on November 12, 1973, the effect of which was to disallow the mechanics' lien of Hous-

ton. In accordance with the report of the auditor, this court filed a proposed distribution on December 28, 1973. Exceptions were filed to the auditor's report and the proposed distribution of the court by Houston and later argued. Accordingly, not only has the litigation been protracted but also it involves certain questions relating to a mechanics' lien, an area of the law considered by most lawyers to be arcane.

## DISCUSSION

Houston's mechanics' lien claim is based on a certain contract or contracts between R & F Construction, the owner, and Houston. There is no evidence and no contention on the part of exceptants that Houston dealt contractually with the general contractor, Ward. The auditor found as a fact that there was no "identifiable" contract or contracts between R & F Construction, the owner, and Houston for an agreed sum covering the materials furnished in the construction by Houston. The auditor also found as a fact that the mechanics' lien claim was not filed within four months as required by the relevant law. On this basis, the mechanics' lien claim was disallowed. This court must respectfully disagree with the auditor.

A mechanics' lien is a purely statutory creature conferred on certain persons who benefit the land of a person by contributing to a structural improvement on the land. There are at least two lines of authority relative to the interpretation of the statute. The first is that, since the right to such a lien is derived from statute, strict compliance is required in order to create a valid lien: Brann & Stuart Co. v. Consolidated Sun Ray, Inc., 433 Pa. 574 (1969). An analysis of the line of cases which this case repre-

sents indicates that this principle is applicable particularly to such matters as notice and time requirements. The second line of authority is that a substantial compliance with the statute is sufficient: American Car Co. v. Alexandria Water Co., 215 Pa. 520 (1906). This principle has been held applicable to the contents of the mechanics' lien claim and particularly the required averments relating to the contract or contracts under which the benefit was conferred, the object of these requirements being a sufficient conformity to give notice of the nature of the claim to the owner and other lien creditors so that they will have sufficient knowledge to enable them to ascertain the truth in the event of a dispute. The lien in question was filed under the Mechanics' Lien Law of August 24, 1963, P.L. 1175, 49 PS §§1101, et seq. Section 301 of this act contains the basic declaration

"Every improvement and the estate or title of the owner in the property shall be subject to a lien . . . for the payment of all debts due by the owner to the contractor. . . ."

Contractor is defined by the act as one who by contract with the owner, express or implied, supplies materials or fixtures in connection with any improvement. It should be apparent that Houston was a contractor within the meaning of the act and was entitled to a lien if it perfected its right in accordance with the act.

Houston filed its statement of mechanics' lien claim in this court on September 29, 1972. The averment in the claim which is under fire relates to section 503, subsection 5, 49 PS §1503, of the act, which provides that if the claim is filed by a contractor under a contract or contracts for an agreed sum, the lienor must identify the contract and set

out a general statement of the kind and character of the materials furnished. Houston complied with these requirements in paragraphs 4 and 7 of the claim.

Exceptants contend that Houston does not have a valid mechanics' lien claim for the following reasons:

1. That there never was a contract or contracts for a fixed consideration between Houston and the owner.

2. That if materials were delivered to the construction project by Houston and incorporated into the construction, they were the result of a series of isolated orders beginning December 21, 1971, and continuing with regularity until April 28, 1972, to be followed by an isolated final delivery on July 6, 1972, and since the claim was not filed until September 29, 1972, the only claim available to Houston would be for the amount of the last delivery, $279.84.

3. That Houston is not entitled to a lien by reason of section 303(e) relating to security interests, and that Houston had a security interest in the personal property delivered and incorporated into the construction (49 PS §1303).

4. That Houston is barred by the operation of equitable estoppel under section 401 of the act (49 PS §1401).

An extensive hearing on the background of the lien was held by an auditor. The testimony offered by Albert B. Starr, an employe of Houston, and Paul H. Cover, who was president, secretary and owner of 50 percent of the shares of the owner, convinces this court to a certainty that there was either a contract or a series of contracts between Houston and the owner covering the sale and purchase of the

materials and services included in the claim. Whether or not there was one contract or two contracts is not controlling, because the evidence is clear that Cover, representing the owner, solicited firm price quotations on various materials required in the project from Starr, acting in behalf of Houston, and that these materials and services were furnished and delivered by Houston. Accordingly, it is not necessary to consider whether the owner was bound to purchase all of the materials for which quotations were solicited because the evidence indicates that this is what precisely happened. In stating its claim, Houston considered it as one contract. Houston had a right to so state its claim under section 306(a) of the act, 49 PS §1306, which provides for consolidation of claims. In anticipation of the contention that the statement is defective because the matter of the materials furnished should have been averred under subsection 6 rather than subsection 5 of section 503 (supra) of the act, it is the opinion of this court that subsection 6 covers cases where a claim might be made on a "quantum meruit" or quasi contractual basis.

It remains now to determine whether or not the charge for all of the materials and services furnished by Houston and for which no payment was received qualifies as a valid lien. If the materials were furnished under a single contract, there can be no doubt that the claim must be filed within four months of the last delivery. If they were furnished under more than one contract, validity of the lien must rest on section 306(a) of the act, the governing part being as follows:

"Where a debt is incurred for labor or materials furnished continuously by the same claimant for work upon a single improvement but under more

than one contract, the claimant may elect to file a single claim for the entire debt."

A parallel provision in the Mechanics' Lien Law of 1901 was interpreted in the case of Felheim v. Perry Brewing Co., 63 Pa. Superior Ct. 561 (1916), to mean that if the intention is to furnish materials as the work progresses and as the materials are needed, even though there be more than one contract, the lien may be filed within the prescribed period after furnishing the last item. Although one may not tack on items merely to preserve the lien, where there is an interrelationship between the various items furnished and the sale and purchase of them were contemplated by the parties, either expressly or impliedly at the time the contractual relationship began, the delivery date of the last item prevails. Or, as the court stated in McCrady-Rodgers Co. v. Nenoff, 155 Pa. Superior Ct. 555 (1944), in allowing a lien where the contractor, in pursuance of verbal requests of the contractor, made deliveries of building materials to the improvement on 43 different dates beginning March 27 and ending September 10, 1941:

"Although the materials were ordered and delivered at different dates . . . we have a single undertaking and the items furnished have the same unity as if furnished under one contract." (pp. 557-8)

While the time that elapses between deliveries is a factor (in Felheim, supra, where there was a time lapse between March 22 and June 3), it must yield to the overall circumstances of continuity. It is true that in this case, there was a time lapse from April 28th until July 11th, when the last delivery was made, but there is no evidence that the last delivery

was simply performed to obtain a lien for the entire debt; on the contrary, it was a delivery of material to replace certain material cancelled on April 28 and for which credit had been given.

Houston did not have any security interest in the material delivered. Section 303(e) of the act must be read in the light of an amendment to the Mechanics' Lien Law of 1901 which referred to conditional sales and bailment leases: Act of July 12, 1935, P.L. 667, 49 PS §32. Section 1-201 (37) of the Uniform Commercial Code, as well as section 9-105(h), (i), clearly indicates this: as amended, Act of April 6, 1953, P.L. 3, 12A PS §1-101.

This court can find no application of the doctrine of equitable estoppel which would invalidate the lien. Equitable estoppel arises when one by his acts, representations, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief so that he will be prejudiced if the former is permitted to deny the existence of such facts: Murphy and Slota v. Burke, 454 Pa. 391 (1973). In order that Houston be affected by this doctrine, it would have had to be charged with conduct toward exceptants which misled them into extending credit for their labor and materials furnished to the principal contractor, Harold Ward, for the reason that Houston was in the same "boat" as they were—conferring benefits shielded against a mechanics' lien by a waiver of Harold Ward. In fact, they were not in the same boat because they had secured judgment notes executed by both the owner and the principal contractor. They might have thought that Houston had no remedy under the mechanics' lien law, but there is no evidence on

the record to show that they were prejudiced with regard to their remedies by anything that Houston did.

It is desired to make one final observation. There is a strong set of inferences from the evidence that the owner, R & F Construction, exercised control over the general contractor, Harold Ward, which might tend to negate the independent contractor status of Harold Ward. This was explained by Cover, speaking for the owner, when he stated that he was also the designer of the structure and retained the right to pass on certain details of the construction; that despite the issuance of checks by the lending institution on progress statements by the owner and contractor, which checks were signed by both the owner and the contractor and drawn to the order of the subcontractor (including, perhaps, Houston), and that there might have been an element of "fictitiousness" about the general contract; nevertheless, it was a device required by the lending institution. The totality of all of these elements might have accrued to the benefit of exceptants, who were subcontractors, by affording them liens under section 407 of the mechanics' lien law (49 PS §1407). Whether this remedy would have placed them in a more favorable position as against Houston need not be inquired into because they took another route by way of judgment notes from the owner.

## FINDINGS OF FACT

1. That on April 8, 1971, R & F Construction, Inc. became vested with title to a lot of land situate

in the Third Ward of the Borough of Indiana, County of Indiana, Pa.

2. That on or about September 22, 1971, R & F Construction, Inc. entered into a contract with H. G. Ward, Inc., for the construction of an apartment building on the tract of land described in paragraph 1 hereof, containing a waiver of liens which was filed in the office of the Prothonotary of Indiana County on September 21, 1971.

3. That in November 1971 and February 1972, R & F Construction, Inc. negotiated with Houston-Starr Company for the purchase of certain materials and services to be incorporated in the building being constructed by H. G. Ward, Inc., and on the basis of firm price quotations, took delivery of the same on 18 different occasions between December 9, 1971 and July 6, 1972.

4. That all of said materials and services were incorporated into the building.

5. That the total amount of goods and services purchased by R & F Construction, Inc. and sold by Houston-Starr Company was $21,420.53 of which $5,478.76 was paid, leaving a balance of $15,941.77 for which Houston-Starr Company entered a mechanics' lien claim in the Court of Common Pleas of Indiana County on September 29, 1972, in which claim the lienor averred its right by reason of a contract for materials sold and delivered to R & F Construction, Inc. in connection with the erection of a certain apartment building on the land described in paragraph 1 hereof.

6. That the date of the visible commencement of the construction of the building on the land referred to in paragraph 1 hereof was prior to December 1, 1971.

7. That the land and appurtenant improvements of R & F Construction, Inc. was sold at sheriff's sale by the Sheriff of Indiana County on December 15, 1972, on certain writs of execution based on judgments no. 25, December term 1972, in favor of Rome Electric Co., Inc., and no. 26, December term 1972, in favor of James Banda, Inc., both of which judgments were entered in the Court of Common Pleas of Indiana County on September 18, 1972.

## CONCLUSIONS OF LAW

1. That Houston-Starr Company had a valid mechanics' lien claim against the land and appurtenant improvements of R & F Construction, Inc., which land is described in paragraph 1 of the findings of fact.

2. That the mechanics' lien claim dated as to priority from on or about November 1, 1971, and, accordingly, is entitled to preference in the distribution of the proceeds of the sheriff's sale over the judgments of Rome Electric Co., Inc. and James Banda, Inc.

3. That Houston-Starr Company is not entitled to interest on its mechanics' lien claim for the reason that the claim was not liquidated until after the sheriff's sale, and further, that the proceeds of the sheriff's sale from which the claim will be paid was in custodia legis since December 15, 1972.

4. That the exceptions of Houston-Starr Company to the auditor's report as filed November 21, 1973, are sustained, and payment of its mechanics' lien claim in the sum of $15,941.77 should be ordered.

## ORDER

And now, April 10, 1974, in keeping with the foregoing opinion, findings of fact, and conclusions of law, the following distribution of the undistributed balance presently in the custody of the Sheriff of Indiana County, being a part of the proceeds of the sheriff's sale on executions nos. 4 and 5, December term 1972, is ordered and directed to be made:

| | | |
|---|---|---|
| Total for Distribution | | $19,294.83 |
| To Ronald Johnston, prothonotary unpaid record costs: | | |
| Ex. no. 4 December term 1972 | $ 3.00 | |
| Ex. no. 5 December term 1972 | 3.00 $ | 6.00 |
| To costs of audit: | | |
| G. W. Musser, auditor | 750.00 | |
| Betty Stewart, court reporter | 144.90 | 894.90 |
| To Commonwealth of Pennsylvania, Department of Revenue— unpaid corporate taxes | | 1,029.22 |
| To Houston-Starr Co.: mechanics' lien, 17 December 1972 | | |
| Costs | 5.00 | |
| Mechanics' lien claim | 15,941.77 | 15,946.77 |
| To James Banda, Inc., balance remaining from amount withheld (order of court, January 22, 1973) | | 708.97 |
| To Rome Electric Co., Inc., balance remaining from amount withheld (order of court, January 22, 1973) | | 708.97 |